IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID TRINH,

    Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

    Defendant.

No. 1:21CV105

ORDER AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant International Business Machines Corporation's ("IBM" or "Defendant") Motion to Dismiss or Transfer [Doc. # 9]. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for lack of venue, or, alternatively, to transfer this action pursuant to 28 U.S.C. §§ 1406(a) and 1404(a). Also pending is Plaintiff David Trinh's Motion to File a Corrected Brief and Surreply [Doc. #20]. For the reasons set forth below, Defendant's Motion to Dismiss or Transfer should be denied and Plaintiff's Motion to File a Corrected Brief and Surreply will be granted in part and denied in part.

I.    BACKGROUND, FACTS, AND PROCEDURAL HISTORY

From 2015 to 2020, Defendant IBM employed Plaintiff as a software sales agent. (Compl. [Doc. #1] ¶ 14.) Plaintiff alleges that Defendant improperly capped commissions stemming from multiple software sales in 2018 and 2019, and that Defendant wrongfully terminated Plaintiff in December 2020. (Id. ¶¶ 5-6.) Plaintiff seeks to recover $237,486 in unpaid

commissions from Defendant under six causes of action denominated as follows: (1) violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 et seq.; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) quantum meruit; (5) unjust enrichment; and (6) punitive damages. (Id. ¶ 38.)

The Complaint alleges that Plaintiff worked as a software sales representative for Defendant from 2015 until December 2020. (Compl. ¶¶ 6, 14.) According to the Complaint, Plaintiff's compensation as a sales representative for Defendant consisted of a base salary and uncapped commissions, which were to be tiered, uncapped, and based on Plaintiff's sales in relation to his target sales quota. (Id. ¶ 16.) Plaintiff alleges that his understanding of the terms of his employment, based on Defendant's representations through informative presentations, trainings, and conversations with managers, was that his earnings on commissions were unlimited, or "uncapped", meaning that his earning potential was unlimited. (Id. ¶¶ 22-32.) Plaintiff alleges that in 2018 and 2019 he worked on Defendant's behalf to effectuate multiple telecommunications contracts ("the Telecom Deals") which generated aggregated commission earnings of approximately $663,486 in total, and which Defendant should have paid to him in three payments over the course of 2019. (Id. ¶¶ 34-37.) However, Plaintiff alleges that while Defendant paid him $426,000 in commissions, Defendant failed to pay the remaining $237,486. (Id. ¶ 38.) Plaintiff alleges that in November 2019, his first-line manager told him that his earnings were too high, that IBM sales representatives were being overpaid, and that what Plaintiff had already been paid in commissions "seemed fair". (Id. ¶¶ 38, 41.) Plaintiff contends that Defendant refused to pay the remaining commission earnings. (Id. ¶¶ 38, 41.) Finally, Plaintiff alleges that Defendant

2

fired him in December 2020 because he was a witness to a matter relating to theft of intellectual property. (Id. ¶¶ 6-7.)

Plaintiff lives in Holly Springs, North Carolina. Defendant, a multinational software corporation, is incorporated in New York and its principal place of business is in New York as well. (Def. Br. [Doc. #10] at 4.) Additionally, at the time of the allegations in the Complaint, Defendant operated (and continues to operate) an office in the Research Triangle Park area of Durham, which is located in this District. It is undisputed that from 2015 to 2019, Plaintiff lived in North Carolina, generally worked from home, and when he needed to go in to the office, went in to Defendant's Research Triangle Park location. (Trinh Aff. [Doc. #15] ¶ 16) ("I visited IBM's physical office in the Research Triangle Park about four times per year, usually for various meetings."). There is some question as to whether Plaintiff moved to Florida in early 2020, and if so, for how long. (Def. Br. at 4 and Ex. 1 (showing emails from Plaintiff indicating that he moved to Florida in early 2020)); (Trinh Aff. ¶15) ("Around [March 2020] I had considered purchasing a property in Florida and moving there part-time, including moving my home office there . . . . However, I did not go through with that move."). In any event, it is undisputed that Plaintiff lived in Holly Springs for the majority of his employment with Defendant and that, at least through then end of 2019, he reported for any in-person meetings at Defendant's Research Triangle Park office.

II. VENUE

   A. Applicable Standards

If a defendant raises an objection to venue under Federal Rule of Civil Procedure 12(b)(3), the plaintiff must make a *prima facie* showing that venue is proper in the judicial district in

which the plaintiff brought the action. Lucas v. Fam. Dollar Stores of N. Carolina, Inc., No. 1:13CV574, 2014 WL 12884104, at *2 (M.D.N.C. Apr. 24, 2014). When considering a motion to dismiss under Rule 12(b)(3), the Court may consider evidence outside the pleadings. Id. In determining whether the plaintiff has made a *prima facie* showing of proper venue, the Court views the facts in the light most favorable to the plaintiff. Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 365-66 (4th Cir. 2012) (citations omitted).

Under 28 U.S.C. § 1391, there are three ways to properly lay venue in a civil action. First, venue is proper "in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" § 1391(b)(1). Second, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" § 1391(b)(2). Third, if there is no district in which an action may otherwise be brought, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such an action." § 1391(b)(3). "Natural person[s]" are deemed to reside in the judicial district where they are domiciled. § 1391(c)(1). Defendant-entities, whether or not they are incorporated, are deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" § 1391(c)(2). See Cox v. Travelers Companies, Inc., No. 1:10CV3, 2010 WL 2925950, at *2 (N.D.W.Va. July 22, 2010) ("[F]or a corporate defendant, if the requirements of personal jurisdiction are met in a district, then venue is proper").

B.  Discussion

In support of its Motion to Dismiss or Transfer, Defendant argues that this District is not the proper venue for this action because Defendant is a citizen of New York and because

4

"there are no facts in the Complaint that even suggest a connection between Plaintiff's claims and the State of North Carolina." (Def. Br. [Doc. #10] at 4.) Defendant argues that the residency provision of the venue statute, § 1391(b)(1), is inapplicable because Defendant is a New York corporation. Second, Defendant argues that the "substantial part of the events" provision, § 1391(b)(2), is inapplicable because the events or omissions giving rise to the claim took place outside of this District. Third, Defendant argues that the catch-all provision, § 1391(b)(3), is inapplicable because the Southern District of Florida is the proper venue for this action. (Id. at 4-5.)

Defendant's contentions are without basis. Venue is clearly proper in this District under both the residency provision set out in § 1391(b)(1) and the "substantial part of the events" provision set out in § 1391(b)(2).[1] Defendant's motion to dismiss for improper venue should accordingly be denied.

First, venue is proper under the residency provision, § 1391(b)(1), because the residency rule for corporations, for purposes of venue, states that a defendant-corporation is deemed to reside in "any judicial district in which it is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c). It is undisputed that Defendant IBM is subject to personal jurisdiction in this District; Defendant does not contend otherwise. Defendant, a multinational technology corporation, does business in this District and maintains an office in Durham County where Plaintiff's remote employment was based and where other employees remain employed today. (Trinh Aff. ¶ 16). Plaintiff brings contract-

---

[1] Because venue is proper under § 1391(b)(1) and (b)(2), the Court need not reach the question of whether venue is proper under the catch-all provision contained at § 1391(b)(3).

Case 1:21-cv-00105-NCT-JEP    Document 22    Filed 03/02/22    Page 5 of 13

related and employment-related claims stemming from his work for Defendant over a five-year period in North Carolina and specifically, when his work required him to visit an office, in Durham County. Defendant argues that it does not *reside* in this District because it is a *citizen* of New York, but this assertion conflates corporate residency for venue purposes with corporate citizenship for diversity purposes. See, e.g., Douglas v. D.B. Virginia, LLC, No. 4:10CV80, 2010 WL 5572830, at *3 (E.D. Va. Dec. 13, 2010), ("The question of 'residence' for venue purposes, however, is a separate inquiry than 'citizenship' for diversity purposes[.]"), report and recommendation adopted, No. 4:10CV80, 2011 WL 102721 (E.D. Va. Jan. 10, 2011). Plaintiff points out Defendant's error on this issue in Plaintiff's Response brief, but Defendant has failed to address this issue at all in its Reply brief. In light of the clear statutory provisions, venue is proper in this District under § 1391(b)(1), and Defendant's contentions to the contrary are without any legal basis.

Second, venue is also proper in this District under the "substantial part of the events" provision, § 1391(b)(2). "Under [§ 1391], it is possible for venue to be proper in more than one judicial district. . . . Additionally, in determining whether events or omissions are sufficiently substantial to support venue under [§ 1391], a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review 'the entire sequence of events underlying the claim.'" Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) (citations omitted). Here, the sequence of events in this District underlying the claims at issue is sufficiently substantial to support the propriety of venue in this District. As noted above, Plaintiff was living and working in North Carolina in 2018 and 2019 when the sales were made and the disputed commissions were allegedly earned, and during that time

Plaintiff reported to Defendant's office in the Research Triangle Park area when he was unable to perform his duties remotely. (Trinh. Aff. ¶ 16.) Defendant asserts that "at the time the events occurred that gave rise to the claims in the Complaint, Plaintiff lived in Florida" and that therefore venue is not proper in this District. (Def. Br. at 4.) However, the record before the Court reflects that Plaintiff's relocation to Florida did not occur until sometime in 2020. The Parties dispute the circumstances regarding Plaintiff's relocation to Florida and the length of time that Plaintiff stayed there, but regardless, Plaintiff alleges that Defendant capped his commissions and failed to pay commissions that he earned for the period of 2018 through 2019, and these allegations fall squarely within the undisputed temporal boundaries of Plaintiff's residence in Holly Springs and employment through Defendant's Research Triangle Park office. Thus, the Court need not resolve any remaining disputes regarding Plaintiff's residence in Florida in 2020 because Plaintiff's location in 2020 would not affect the conclusion that a substantial part of the events giving rise to the claim occurred in this District prior to 2020. See Mitrano, 377 F.3d at 405. Accordingly, due to the nature of Defendant's Research Triangle Park office in this District and Plaintiff's employment with Defendant while he was living in North Carolina during the relevant period in 2018 and 2019, the events and/or omissions giving rise to the claim took place in substantial part in this District and venue is proper under § 1391(b)(2).

For all of these reasons, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) should therefore be denied.

7

Case 1:21-cv-00105-NCT-JEP    Document 22    Filed 03/02/22    Page 7 of 13

III.   TRANSFER

   A.   <u>Applicable Standards</u>

As an alternative to dismissal for improper venue under Fed. R. Civ. P. 12(b)(3), Defendant argues that this Court should exercise its discretion and transfer this action to the Southern District of Florida. (Def. Br. at 5.) "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). If a defendant files a motion to transfer under this section, the Court makes two inquiries: (1) whether the plaintiff's claims might have been brought in the court where it is to be transferred; and (2) whether the interests of justice and the convenience of the parties and witnesses justify transfer to that district. See <u>LG Elecs. v. Advance Creative Comput. Corp.</u>, 131 F. Supp. 2d 804, 809 (E.D. Va. 2001). "The phrase 'where it might have been brought' in section 1404(a) refers to a forum where venue originally would have been proper for the claim and where a defendant originally would have been subject to personal jurisdiction." <u>Kotsonis v. Superior Motor Express</u>, 539 F. Supp. 642, 645 (M.D.N.C. 1982).

To assess convenience of the parties and witnesses, as well as the interest of justice, the Court considers the following discretionary factors:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum

that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of law.

Speed Trac Techs., Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 802-03 (M.D.N.C. 2008) (quoting Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996)). "The 'analysis of these factors is qualitative, not merely quantitative.'" Progressive Cas. Ins. Co. v. Future Van Lines, LLC, No. 1:20CV960, 2021 WL 4413319, at *2 (M.D.N.C. Sept. 27, 2021) (quoting Speed Trac, 567 F. Supp. 2d at 803). The burden of persuasion lies with the movant, who must show that the factors weigh in favor of transfer. See Speed Trac, 567 F. Supp. 2d at 803.

B. Discussion

At the outset of this inquiry, the Court first considers whether venue would have been proper in Defendant's proposed alternative district, the Southern District of Florida. See, e.g., Kotsonis, 539 F. Supp. at 645. Here, it is not at all clear that Defendant would have been subject to personal jurisdiction in the Southern District of Florida on Plaintiff's claims here. Moreover, even if that step could be satisfied, at the second step the interests of justice and the convenience of the Parties and witnesses weigh in favor of maintaining this action in this District.

With respect to the factors related to Plaintiff's initial choice of forum, the relative ease of access to sources of proof, and the availability of compulsory process for attendance of unwilling witnesses, "[t]he plaintiff's choice of forum generally is entitled to respect and deference and should rarely be disturbed." Speed Trac, 567 F. Supp. 2d at 803 (internal citation and quotations omitted). This usual deference is heightened when a plaintiff sues in his home state, and diminished when the plaintiff's choice of forum has little connection to the action.

9

Compare Campbell v. Apex Imaging Servs., Inc., Nos. 1:12CV1366, 1:12CV1365, 2013 WL 4039390, at *4 (M.D.N.C. Aug. 7, 2013) with Parham v. Weave Corp., 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) ("[T]he deference given to the plaintiff's choice is proportionate to the relation between the forum and the cause of action."). Additionally, when considering the relative ease of access to sources of proof, "courts consider ease of access to witnesses and other evidence for trial." Progressive Cas. Ins. Co., 2021 WL 4413319, at *2-*3 (quoting Speed Trac, 567 F. Supp. 2d at 804) (internal quotation marks omitted). When, as here, there is no indication that any witness will be unwilling to participate in the action, that factor's analysis "folds into the analysis related to ease of access of proof." Id. at *3.

Here, the Court affords substantial weight to Plaintiff's choice of forum because Plaintiff brought suit in his home state. (Trinh. Aff. ¶ 3) ("Since [2010] I have been a resident of North Carolina and only North Carolina"). Even with the dispute regarding where Plaintiff lived for part of 2020, it is clear Plaintiff lived in North Carolina while employed with Defendant from 2015 through 2019 and in 2021 at the time this suit was filed. Additionally, Plaintiff's allegations are centered around his employment with Defendant, which is connected to Defendant's office in this District. Therefore, the first factor weighs against transferring venue to the Southern District of Florida. With respect to the second and third factors, Defendant has made no showing that the pertinent witnesses, documents, and evidence regarding the factual issues in this matter would be more easily accessed if this litigation took place in Florida. See Speed Trac, 567 F. Supp. 2d at 804. Moreover, given that Plaintiff's employment with Defendant took place at least in large part—if not entirely—in North Carolina, it would seem to the Court that the Parties would not have significant difficulty

presenting the relevant witnesses, documents, and evidence in this District. Accordingly, the first, second, and third factors weigh against transferring this action to the Southern District of Florida.

With respect to the factors related to the local interest in having localized controversies settled at home, the appropriateness of having a trial in a diversity case in a forum that is at home with the state law governing the action, and the avoidance of unnecessary problems with conflicts of laws, these factors weigh in favor of keeping this diversity action in this District. (Compl. ¶ 10); see 28 U.S.C. § 1332. Plaintiff's claims arise in part out of an employment contract which the Parties entered into in North Carolina, and in part out of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 et seq. In addition, North Carolina has a greater interest in this litigation because "it is the forum at home with the state law that will likely govern this action." Progressive Cas. Ins. Co., 2021 WL 4413319, at *3. Additionally, North Carolina "has a closer relationship with the operative events because it has a substantial connection with the heart of the matter", namely Plaintiff's employment with Defendant and Defendant's alleged failure to pay commissions owed to Plaintiff. Therefore, the ninth, tenth, and eleventh factors weigh against transferring this action to the Southern District of Florida.

The remaining factors are not relevant to this inquiry. See id. at *4 (analyzing only the relevant venue transfer factors). No view of the premises is necessary in this action. Neither party alleges potential difficulties in obtaining a judgment or accessing a fair trial. Neither party argues that administrative difficulties or "other practical problems" weigh in favor of or in opposition to transfer of this action to the Southern District of Florida.

In reviewing the relevant factors: transfer is not appropriate in this matter because: (1) deference is owed to Plaintiff's initial choice of forum due to the nature of the allegations, which are substantially associated with this District and with North Carolina; (2) sources of proof will likely be easier to access in North Carolina than in Florida; (3) nothing before the Court indicates that witnesses will be unwilling to participate in this action; (4) North Carolina law will control this diversity action; and (5) North Carolina has a strong interest in resolving this dispute because its connection to the case is clear while Florida's connection is tenuous at best. Accordingly, transfer of this action to the Southern District of Florida would not further the interests of justice and convenience of the parties and potential witnesses, and Defendant's alternative Motion to Transfer should be denied.

## IV. SURREPLY AND CORRECTED BRIEF

The second matter before the Court is Plaintiff's Motion for Leave to File Corrected Brief and Surreply in Opposition to Defendant's Motion to Dismiss or Transfer [Doc. #20]. For the reasons set forth below, the Court will grant the Motion with respect to the corrected brief and deny the motion as unnecessary with respect to the surreply.

As to Plaintiff's request to file a corrected brief in opposition to Defendant's Motion to Dismiss, the Court finds good cause to grant this request. Plaintiff has submitted a Proposed Corrected Brief which features the proposed corrections [Doc. #20-4] and Defendant does not oppose the filing of a corrected brief. (Def. Resp. [Doc. #21] at 1.) Therefore, the Court will grant Plaintiff's request to file a corrected brief in response to Defendant's Motion to Dismiss or Transfer, and the Court has considered the corrected Brief [Doc. #20-4].

12

With regard to the request to file a surreply, the Court notes that Defendant's Reply brief addresses only issues regarding whether and how long Plaintiff lived in Florida during 2020. These factual disputes are not material, since the Court can resolve the venue issue regardless of whether Plaintiff relocated to Florida for some period of time in 2020, as discussed above. Therefore, a surreply is not necessary to resolve the pending Motion to Dismiss. The Court further notes that Plaintiff has not attached a proposed surreply, and there is no reason to delay the matter to allow filing of a surreply. Therefore, the Court will deny Plaintiff's Motion with respect to the surreply.

V. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion to File Corrected Brief and Surreply [Doc. #20] is GRANTED IN PART and DENIED IN PART as set forth above.

IT IS RECOMMENDED that Defendant's Motion to Dismiss or Transfer [Doc. #9] be DENIED.

This, the 2nd day of March, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge